UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

OWEN HALLOCK,                                  )
                                               )
    Plaintiff,                                 )
                                               )
v.                                             )    Case No. _____
                                               )
DG RETAIL, LLC d/b/a DOLLAR GENERAL,           )
                                               )
    Defendant.                                 )

**COMPLAINT AND REQUEST FOR JURY TRIAL**
**WITH INJUNCTIVE RELIEF SOUGHT**

Plaintiff Owen Hallock (hereinafter referred to as "Mr. Hallock"), by and through undersigned counsel, hereby submits this Complaint against Defendant DG Retail, LLC, d/b/a Dollar General (hereinafter referred to as "DG").

**Nature of Action**

1.    This is an action for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to Mr. Hallock by the Maine Human Rights Act ("MHRA"), 5 M.R.S. §4451, *et seq.*, and the Americans with Disabilities Act as Amended ("ADA"), 42 U.S.C. § 12112, *et seq.*

**Parties**

2.    Mr. Hallock is a male citizen of the State of Maine, living in the town of Lewiston, County of Androscoggin.

3.    DG is a Tennessee limited liability company licensed to do business in Maine, with a place of business in the Auburn, Maine, County of Androscoggin, State of Maine, and a registered corporate agent in Augusta, County of Kennebec, State of Maine.

### Jurisdiction and Venue

4. This court has jurisdiction of the federal claims asserted here pursuant to 28 U.S.C. §§ 1331 and 1343. This court has supplemental jurisdiction over the claims in this action arising under the law of the State of Maine pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 14 M.R.S. §§ 501, 505.

6. Mr. Hallock has exhausted all of his administrative remedies and has satisfied the requirements of 5 M.R.S. § 4622.

7. Mr. Hallock timely filed a complaint with the Maine Human Rights Commission ("MHRC"), which was dual filed with the Equal Employment Opportunity Commission ("EEOC").

8. Prior to filing this action, both the MHRC and the EEOC issued a Right to Sue letters.

### Jury Demand

9. Mr. Hallock demands trial by jury on all claims to the extent allowed by law.

### Facts

10. Mr. Hallock began working with DG in Auburn, Maine on or about October 14, 2019 as a sales associate.

11. At the time he was hired, Mr. Hallock and his grandmother, Ethel, both informed his DG store manager, Jennifer Smith, that Mr. Hallock had bipolar type 2 with anxiety disorder.

12. Mr. Hallock's disability sometimes triggers panic attacks, which can become severe. The panic attacks substantially affect his ability to work, sleep and sometimes conduct daily activities.

13. When Mr. Hallock first started working at DG, Ms. Smith changed his hours from time to time to accommodate his disability.

14. In March of 2020, James Bradford Woods took over as store manager of Ms. Hallock's DG store in Auburn.

15. During one of the first conversations between Mr. Hallock and Mr. Woods, Mr. Hallock told his new store manager that he had bipolar disorder and anxiety because Mr. Woods had asked Mr. Hallock to stand at the front door and tell people they could not come inside due to COVID-19.

16. DG gave Mr. Hallock verbal evaluations. He was evaluated every month, and those evaluations always indicated Mr. Hallock was doing well in his roll.

17. Beginning in the spring of 2020, Mr. Hallock worked during overnight shifts.

18. On or about June 2, 2020, Mr. Hallock began to experience symptoms of a panic attack at work.

19. Around 2:00 p.m. that day, Mr. Hallock told Mr. Woods that he was having an anxiety attack and asked his boss if he could take his break a little early.

20. Mr. Hallock had a telehealth appointment with his physician at 2:00 p.m., which he took from his car in the DG parking lot. Shortly after 2:00 p.m., Mr. Woods came out to the parking lot where Mr. Hallock was on the phone with his doctor and began waving his arms around. He raised his hands up for Mr. Hallock to come back inside. Mr. Hallock terminated the call with his doctor and returned to work.

21. Mr. Hallock's panic attack and anxiety continued to worsen.

22. Around 3:30 p.m., Mr. Hallock approached Mr. Woods in the cooler room near the milk section and asked if he could talk to him. Mr. Woods said they could walk to his office.

23. In the office, Mr. Hallock again told Mr. Woods that he was having a serious panic attack and requested to leave work as a reasonable accommodation. In response, Mr. Woods told Mr. Hallock that he was just "over thinking," that he "was fine," and should "go right back to work."

24. Mr. Hallock again disclosed to his boss that he was still having an anxiety, paranoia, and a panic attack, and it wasn't going away. Mr. Woods replied, "oh, so you just don't want to work." Mr. Hallock responded, "no, that's not it. It's an anxiety attack. I have bipolar. It's part of the symptoms." Mr. Woods said, "that's bullshit. I have never heard some shit like that in my life. Get the hell out of the office."

25. Mr. Woods also said to Mr. Hallock, "You can leave, but if you do leave, I'm going to have to call Alan." Alan is (or was) a DG Regional Manager.

26. Based on this comment, as well as the other derogatory remarks Mr. Woods had made, Mr. Hallock reasonably believed that his request to leave due to his anxiety attack meant that he would get fired. This encounter and threat of termination spiked Mr. Hallock's anxiety even further.

27. Mr. Hallock left the office and called his grandmother about ten times on the phone. Crippled with anxiety, Mr. Hallock remained in the back room until his grandmother could come pick him up.

28. Notably, Mr. Woods had left the DG store for the day at 4:00 p.m., prior to Mr. Hallock being picked up. Mr. Woods left only Christy Besto, a cashier, at the store.

29. It is a breach of DG policy and protocol for management to leave the store unattended without another manager, which is exactly what Mr. Woods did.

30. The following day, June 3, 2020, Mr. Woods approached Mr. Hallock as he was working behind the counter. He loudly said to Mr. Hallock, "I don't want to talk to you. Get out from behind the counter and leave the store. I'll call you or text you to let you know what is going on." Other DG employees observed this interaction.

31. Mr. Hallock didn't know what to do. He left the store like his boss told him too.

32. Mr. Woods never called or texted Mr. Hallock or his grandmother.

33. On Sunday, June 14, 2020, at 2:40 p.m., Mr. Hallock and his grandmother placed a call to the DG 1-800 number for employees. The system was automated. Mr. Hallock was prompted to leave a message. In the message, Mr. Hallock stated his name and said that he had worked at the store on Sabattus Street in Auburn. Mr. Hallock stated in the message that he felt discriminated against and he wanted to talk to someone about it.

34. No one from DG returned his call.

35. Mr. Hallock was harmed, and continued to be harmed by the actions of DG.

## COUNT I
## Disability Discrimination under the MHRA, 5 M.R.S. § 4571

36. Mr. Hallock repeats and realleges the paragraphs set forth above as if set forth in full herein.

37. Mr. Hallock is, and was at all times pertinent to this action, covered by the provisions of the MHRA, 5 M.R.S. § 4553-A(1)(C) and (D) because he was regarded as having a disability and had a record of a disability.

38. Mr. Hallock was and is qualified for his job at DG, since he satisfies the skill, experience, and other job-related requirements for the position, and since he was and is able to perform the essential functions of the position with or without reasonable accommodation.

39. DG failed to reasonably accommodate Mr. Hallock by, among other things, refusing to allow him to leave work during a panic attack secondary to his disability.

40. DG intentionally discriminated against Mr. Hallock by, among other things, making derogatory and biased comments about his need for an accommodation and his disability generally.

41. DG fired Mr. Hallock for requesting an accommodation.

42. DG acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Mr. Hallock can be implied.

43. As a direct and proximate result of the intentional discriminatory acts and practices of DG, its agents and employees, Mr. Hallock has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

## COUNT II:
## Disability Discrimination under the ADA, 42 U.S.C. § 12112

44. Mr. Hallock repeats and realleges the paragraphs set forth above as if set forth in full herein.

45. Mr. Hallock was and is a qualified person with a disability as defined by the ADA, 42 U.S.C. § 12102(1)(B) and (C) because he was regarded as having a disability and had a record of a disability.

46. Mr. Hallock was and is qualified for his position with the DG, since he satisfies the skill, experience, and other job-related requirements for the position, and since

she was and is able to perform the essential functions of the position with or without reasonable accommodation.

47.	DG failed to reasonably accommodate Mr. Hallock by, among other things, refusing to allow him to leave work during a panic attack secondary to his disability.

48.	DG intentionally discriminated against Mr. Hallock by, among other things, making derogatory and biased comments about his need for an accommodation and his disability generally.

49.	DG fired Mr. Hallock for requesting an accommodation.

50.	DG engaged in discriminatory action in the face of a perceived risk that its actions would violate federal law. DG's acts and omissions were done maliciously or with reckless indifference to Mr. Hallock' federally protected rights. DG made no good faith effort to prevent discrimination in Mr. Hallock's workplace.

51.	As a direct and proximate result of the intentional discriminatory acts and practices of DG, its agents and employees, Mr. Hallock has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

## COUNT III
### Retaliation under the MHRA, 5 M.R.S. § 4633

52.	Mr. Hallock repeats and realleges the paragraphs set forth above as if set forth in full herein.

53.	DG discriminated against Mr. Hallock because he requested a reasonable accommodation, which a right granted under the MHRA.

54. DG coerced, threatened, intimidated and interfered with Ms. Hallock's exercise of enjoyment of his rights as granted by the MHRA by firing him in retaliation for needing – and requesting – a requesting a reasonable accommodation.

55. Mr. Hallock was harmed by DG's actions or inaction.

56. DG was well aware of the illegality of its conduct, yet engaged in – with reckless indifference and malice – retaliatory conduct against Mr. Hallock.

## COUNT IV
### Retaliation under the ADA, 42 U.S.C. §12203(a)

57. Mr. Hallock repeats and realleges the paragraphs set forth above as if set forth in full herein.

58. DG discriminated against Mr. Hallock because he requested a reasonable accommodation, which a right granted under the ADA.

59. DG coerced, threatened, intimidated and interfered with Mr. Hallock's exercise and enjoyment of his rights as granted or protected by the ADA by firing him in retaliation for needing – and requesting – a requesting a reasonable accommodation.

60. Mr. Hallock was harmed by DG's actions or inaction.

61. DG was well aware of the illegality of its conduct, yet engaged in – with reckless indifference and malice – retaliatory conduct against Mr. Hallock.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order providing as follows:

A. Enter judgment declaring that DG's practices complained of herein are unlawful as alleged;

B. Grant Mr. Hallock a permanent injunction enjoining DG, its officers, agents, successors, employees, attorneys and assigns and other representatives, and all persons acting in

concert with it and at its direction, from engaging in any employment policy or practice which retaliates against Mr. Hallock;

    C.    Order DG to make Mr. Hallock whole by providing reinstatement and/or front pay, appropriate back pay, and reimbursement for health, medical and other benefits in amounts to be shown at trial;

    D.    Order DG to pay Mr. Hallock compensatory damages for non-pecuniary losses, including, but not limited to, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, and damage to her reputation.

    E.    Order DG to pay Mr. Hallock civil penal damages pursuant to 5 M.R.S. § 4613(2)(B)(7);

    F.    Order DG to pay litigation costs and expert witness fees;

    G.    Order DG to pay nominal damages;

    H.    Order DG to pay pre-judgment, post-judgment interest, and reasonable attorneys' fees to Mr. Hallock; and

    I.    Grant such additional relief as this Court deems appropriate.

*/s/ Jordan Payne Hay*

Jordan Payne Hay, Esq., Bar No. 5611
Attorney for Plaintiff, Owen Hallock
SKELTON TAINTOR & ABBOTT
500 Canal Street
Lewiston, Maine 04240
(207) 784-3200
jphay@sta-law.com

DATED: October 6, 2021